**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CORRINA WEIDOW and KERRY BENTLER, | | NO. 3:08-CV-1978 |
| Plaintiffs, | | |
| v. | | (JUDGE CAPUTO) |
| SCRANTON SCHOOL DISTRICT, | | |
| Defendant. | | |

## <u>MEMORANDUM</u>

Presently before the Court is the Motion to Dismiss of Defendant Scranton School District ("SSD"). (Doc. 7.) SSD moves to dismiss Counts I, II, and IV of Plaintiffs' complaint as well Plaintiffs' claim for punitive damages pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, SSD's motion will be denied as to Counts I and III, but granted as to Count IV and Plaintiffs' claim for punitive damages.

## BACKGROUND

The facts as alleged in Plaintiffs' Complaint are as follows. Plaintiff Corrina Weidow ("Weidow") was born on May 18, 1990, and remained a minor until her eighteenth birthday on May 18, 2008.[1] (Compl. ¶¶ 5, 12, Doc. 1.) Weidow enrolled in ninth grade at West Scranton High School ("West Scranton H.S."), part of SSD, in August of 2004, and at all relevant times before graduating from Scranton High School ("Scranton H.S.") on June 19,

---

[1]     The Complaint lists Weidow's date of birth as May 18, 1990 (Compl. ¶ 5), but lists her eighteenth birthday as May 8, 2008 (*id.* ¶ 12). The Court uses the May 18 date.

2008, she lived within the SSD.  (*Id.* ¶¶ 5, 12-13, 125.)  In May of 2004, prior to entering high school, Weidow was diagnosed with bipolar disorder by Dr. Matthew Berger.  (*Id.* ¶ 8.) Weidow is allegedly a "disabled" individual as defined by the Rehabilitation Act and the Americans with Disabilities Act, but she is "otherwise qualified" to participate in normal school activities.  (*Id.* ¶¶ 9-10.)  Because of her disability, Weidow has difficulty forming and maintaining relationships with others, and she has an intense fear of being touched.  (*Id.* ¶ 9.)

Before the start of classes in August of 2004, Plaintiff Kerry Bentler ("Bentler"), Weidow's mother, notified Guidance Counselor Mary Suchowski and School Nurse Judy Gatelli at West Scranton H.S. that Weidow was bipolar.  (*Id.* ¶¶ 5, 15.)  SSD, however, did not identify or evaluate Weidow as a student who may be in need of special education and/or other accommodation pursuant to its obligations under § 504 of the Rehabilitation Act and the Individuals with Disabilities Education Act ("IDEA").  (*Id.* ¶ 16.)  In November of 2004, Teacher Natalie Colosimo and another school nurse, Ms. Marichak, were informed that Weidow was found cutting herself with a razor in a school bathroom. (*Id.* ¶¶ 17-18.) Despite this evidence of mental disability, SSD did not identify or evaluate Weidow.  (*Id.* ¶ 19.)  In December of 2004, Maryann Herne, a student who was aware that Weidow was bipolar, wrote a note containing violent threats against Weidow and, on more than one occasion, confronted and taunted Weidow.  (*Id.* ¶¶ 20-34.)  Through these incidents, West Scranton H.S. Resource Officer Jeff Gilroy was told that Weidow was bipolar, and it is likely that Principal Kevin Rogan and Vice Principal Jessica Finnerty were also made aware that she was bipolar.  (*Id.* ¶¶ 20-34.)

In late December of 2004, Bentler enrolled Weidow in a school outside of SSD

2

because SSD failed to identify Weidow as a student with a disability or provide reasonable accommodations for her. (*Id.* ¶ 36.) However, in August of 2005, Bentler enrolled Weidow in Scranton H.S. (*Id.* ¶ 37.) Bentler informed Scranton H.S. Guidance Counselor Kristie McDowall that Weidow was bipolar, and that she had experienced problems at West Scranton H.S. and had a history of self-mutilation. (*Id.* ¶ 37.) Bentler also informed a Scranton H.S. school nurse that Weidow was bipolar and that nurse noted it on Weidow's medical information card. (*Id.*) Scranton H.S. placed Weidow and another bipolar student in an English-as-a-second-language class, even though both spoke English as their native language. (*Id.* ¶¶ 38-39.) During tenth grade, Weidow was harassed, threatened, and taunted by other students, who called her "bipolar" and a "psychotic bitch." (*Id.* ¶ 40.) Because this harassment caused Weidow to experience high anxiety and vomiting, she frequently stayed home. (*Id.* ¶ 41.) Bentler called Scranton H.S. Vice Principal Melissa Rose regularly to notify her that Weidow was being harassed because of her disability, but the taunts and threats allegedly continued unabated. (*Id.* ¶ 42.) In the fall semester of tenth grade, Head Guidance Counselor McNulty, Counselor McDowall, and Teacher Scotleski met to discuss changes in Weidow's bipolar medication, but SSD did not evaluate or identify Weidow as a student who may be in need of special education or other accommodation. (*Id.* ¶¶ 44-46.)

Also in the fall of tenth grade, Ms. Herne confronted Weidow at the entrance to Scranton H.S., where Herne took off her shirt and gestured to fight Weidow, saying to her friends, "that's the girl we're going to get." (*Id.* ¶ 47.) As a result of the stress and anxiety Weidow felt because of the taunting incidents, she began to experience insomnia and Dr. Berger prescribed a sedative to help her sleep. (*Id.* ¶ 50.) On February 16, 2006, Bentler

called the Lackawanna County District Attorney's Office ("Lackawanna D.A.") because she did not think SSD was doing enough to respond to Weidow's complaints of harassment. (*Id.* ¶ 51.) Lackawanna D.A. representative Christine Adams, Weidow, Bentler, Vice Principal Rose, and Scranton H.S. Resource Officer John Burgette met to discuss these concerns on February 21, 2006. (*Id.* ¶ 52.) In the fourth quarter of tenth grade, Weidow and Bentler met with Vice Principal Rose and an art teacher, Ms. Gentile, and Bentler informed them that Weidow was bipolar. (*Id.* ¶ 61.) SSD did not identify or evaluate Weidow as a student who may be in need of special education or other accommodation. (*Id.* ¶ 62.)

When Weidow returned for eleventh grade on August 28, 2006, students continued to harass her by calling her names like "bipolar" and "psychotic bitch," putting threatening notes in her locker, and standing in front of her locker so she could not access it. (*Id.* ¶¶ 64-66.) On September 11, 2006, Weidow stopped going to school because she feared for her safety, and Bentler requested a homebound instructor. (*Id.* ¶ 70.) A homebound instructor, Laura Stefonetti ("Stefonetti"), was not assigned until the second quarter of the school year. (*Id.* ¶¶ 76-77.) Because of the delay, Weidow had to complete her first and second quarter assignments at the same time, causing her additional stress. To complete her Spanish assignments, Weidow had to teach herself because Stefonetti was not qualified to teach Spanish and SSD did not provide Weidow with a Spanish-speaking instructor for the course. (*Id.* ¶¶ 83-84.) Stefonetti was only able to get assignments from Weidow's art and math teachers, so she had to speak with Bill King, the Assistant to the Superintendent, to get her other assignments. (*Id.* ¶¶ 78-82.)

On February 27, 2007, Weidow attended Scranton H.S.'s annual semi-formal dance. (*Id.* ¶¶ 85-86.) At the dance, Weidow and her date were harassed by the same students

4

whose harassment caused her to seek a homebound instructor. (*Id.* ¶ 86.) Because of the harassment, Weidow had a panic attack in which she threw up on the dance floor, dug her nails into her shoulders with enough force that she broke her skin, and had difficulty breathing. (*Id.* ¶ 87.) On February 28, 2007, Bentler called Scranton H.S. Principal Brian McGraw to tell him about the events at the dance. (*Id.* ¶¶ 65, 89.) SSD did not evaluate Weidow, offer her an accommodation so that she could attend school events without being harassed, or discipline the students who harassed her. (*Id.* ¶ 91.)

Weidow returned to Scranton H.S. for her senior year on August 27, 2007. (*Id.* ¶ 97.) Before the first day of school, Bentler called Head Counselor McNulty to tell her that Weidow would be attending classes again. (*Id.* ¶ 98.) McNulty did not evaluate Weidow. (*Id.* ¶ 99.) On the first day of classes, Weidow was harassed by a group of the same girls who had previously harassed her. (*Id.* ¶ 100.) These girls obstructed Weidow's path in the hallway, and at lunch, Sandy Schultz, a student who had been charged by the police with making terroristic threats against Weidow at a picnic on June 15, 2007, and who had been ordered by a Magistrate to stay away from Weidow, called her a "psychotic bitch." (*Id.* ¶¶ 96, 100, 102, 105.) After August 27, 2007, Weidow did not return to class because she feared for her safety. (*Id.* ¶ 104.) Bentler called Principal McGraw to report these incidents. (*Id.* ¶ 105.) McGraw did not refer Weidow for an evaluation, offer her an accommodation, or discipline the students who harassed her. (*Id.* ¶¶ 107-08.)

In September, Stefonetti was again assigned as Weidow's homebound instructor. (*Id.* ¶ 113.) In October, Weidow was assigned an art course that Head Counselor McNulty told her was a graduation requirement, but she was not provided with the necessary art assignments until November. (*Id.* ¶¶ 114-15.) Because of the difficulty of the assignments,

Stefonetti's inability to help Weidow with them, and the delay in receiving them, Weidow's anxiety worsened. (*Id.* ¶ 116.) Subsequently, Dr. Berger diagnosed Weidow with anxiety disorder and prescribed an anti-anxiety medication for her. (*Id.* ¶ 117.) On December 6, 2007, despite her frequent assertions to the contrary, Head Counselor McNulty informed Bentler that the art class was not a graduation requirement, and told Stefonetti, "anyway, if she can't do the art, how is she going to handle art in college?" (*Id.* ¶¶ 118-19.) In addition, SSD did not send Weidow's transcripts to the colleges to which she applied, although it sent transcripts for the rest of the graduating class, or provide Weidow with information on senior year activities. (*Id.* ¶¶ 123-24.) Weidow graduated from Scranton H.S. on June 19, 2008. (*Id.* ¶ 125.)

Plaintiffs filed a four-count complaint against SSD on October 31, 2008. (*Id.* ¶¶ 127-50.) In Count I, raised pursuant to the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*, Weidow alleges SSD intentionally discriminated against her in its conduct or lack of conduct, including failing to identify, evaluate, and accommodate her. (*Id.* ¶¶ 127-32.) In Count II, also raised pursuant to the Rehabilitation Act and the ADA, Weidow alleges SSD intentionally discriminated against her by failing to investigate and effectively respond to the peer-on-peer harassment she suffered. (*Id.* ¶¶ 133-39.) In Count III, raised pursuant to 42 U.S.C. § 1983, Weidow alleges she is a "class of one" and was treated differently than other similarly situated students in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. (*Id.* ¶¶ 140-45.) In Count IV, also raised pursuant to § 1983, Plaintiff Bentler alleges SSD's conduct deprived her of her fundamental liberty interest in caring for and guiding Weidow. (*Id.* ¶¶ 146-50.) Plaintiffs seek compensatory and punitive damages.

6

(*Id.* ¶ 150.)

SSD filed a motion to dismiss Counts I, III, and IV pursuant to Federal Rule of Civil Procedure 12(b)(6) on February 9, 2009. (Mot. to Dismiss, Doc. 7) (hereinafter "Mot."). SSD filed a brief in support of its motion on February 24, 2009. (Def.'s Br. in Supp., Doc. 9) (hereinafter "Def.'s Br."). Weidow filed a brief in opposition to the motion on March 17, 2009. (Pls.' Br. in Opp'n, Doc. 12) (hereinafter "Pls.' Br."). SSD did not file a reply brief. SSD's motion has been fully briefed and is ripe for disposition.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type

of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

### I.    Count I – ADA & Rehabilitation Act

<u>A.</u>    <u>Whether Plaintiff States a Claim</u>

Count I of Plaintiffs' complaint raises a discrimination claim by Weidow under the

8

Rehabilitation Act and the ADA. SSD first argues that Count I should be dismissed because Weidow fails to state a claim under either statute. (Def.'s Br. 6-9.) The Court finds that Weidow states a claim under both statutes.

Section 504 of the Rehabilitation Act provides, in relevant part:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a).

To state a *prima facie* claim under § 504 of the Rehabilitation Act, a plaintiff must plead: (1) she is "disabled" as defined by the Act; (2) she is "otherwise qualified" to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) she was excluded from participation in, denied the benefits of, or subject to discrimination at, the school. *Andrew M. v. Del. County Office of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. Pa. 2007).

Title II of the ADA provides, in relevant part:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The pleading requirements under the Rehabilitation Act and ADA are the same, except that an ADA plaintiff need not show that the school receives federal funds. *Calloway*, 89 F. Supp. 2d at 551. Moreover, the law developed under § 504 of the Rehabilitation Act is applicable to Title II of the ADA. *Id.* (citing *Yeskey v. Commw. of Pa. Dep't of Corr.*, 118 F.3d 168, 170 (3d Cir. 1997)).

Looking to the first element, Weidow must allege that she is disabled. A disability is

defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment," 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B). In defining when an impaired person is substantially limited, the U.S. Supreme Court gives the following standard: whether the impairment "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor v. Williams*, 534 U.S. 184, 198 (2002).

Weidow alleges that she has bipolar disorder, a recognized mental impairment under the ADA. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). She alleges that her impairment substantially limits one or more major life activities in that she has difficulty forming and maintaining relationships with her peers and has an intense fear of being touched. *Together with allegations of self-mutilation, anxiety, panic attacks, vomiting, and* insomnia in response to tense confrontations with other students, it can be fairly inferred that Weidow experienced severe difficulty interacting with other students and coping with taunting. Though not yet directly addressed by the U.S. Court of Appeals for the Third Circuit, other circuit courts of appeals have held that "interaction with others" constitutes a major life activity. *Jacques v. DiMarzio, Inc.,* 386 F.3d 192, 204 (2d Cir. 2004); *McAlinder v. County of San Diego*, 192 F.3d 1226, 1234 (9th Cir. 1999); *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 499 (10th Cir. 2000); *but see Rohan v. Networks Presentations, LLC*, 375 F.3d 266, 274 (4th Cir. 2004) (expressing doubt that interaction with others constitutes major life activity). Several district courts in this circuit have declined to hold that interaction with others is not a major life activity, noting that the Third Circuit Court of Appeals "is generally unwilling to take a narrow view of what constitutes a major life activity" and reasoning that

10

"communication and sociability problems cover a broad spectrum of severity" more appropriately weeded out by the substantial impairment analysis. *Peter v. Lincoln Tech. Inst.*, 255 F. Supp. 2d 417, 432 (E.D. Pa. 2002); *Kurten v. Hanger Prosthetic*, 402 F. Supp. 2d 572, 585 (W.D. Pa. 2005) (same) (quoting *Peter*, 255 F. Supp. 2d at 432); *see also Hubbard v. Pleasant Valley Sch. Dist.*, No. 03-cv-0797, 2006 U.S. Dist. LEXIS 1351, at *11-*12 (M.D. Pa. Jan. 6, 2006) (discussing interacting with others as a major life activity). This Court similarly accepts "interacting with others" as a major life activity and finds that Weidow makes sufficient allegations of substantial impairment to withstand a motion to dismiss.

Looking to the second element, Weidow must allege she is "otherwise qualified" to participate in school activities. An otherwise qualified individual is "one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979). Weidow alleges that she was an otherwise qualified student, noting that she successfully completed SSD course work, achieved honor roll, and graduated.

Weidow alleges that the school receives federal funds, satisfying the third element for purposes of the Rehabilitation Act. For purposes of Title II, the school is a "public entity" because such entities include state and local governments, and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A)-(B).

Finally, Weidow must allege that she was excluded from participation in, denied the benefits of, or subject to discrimination at the school. She must allege that a the school knew or reasonably should have known about the disability, but need not demonstrate that the defendant's discrimination was intentional. *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d

11

238, 253 (3d Cir. 1999); *W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir. 1995); *D.G. v. Somerset Hills Sch. Dist.*, F. Supp. 2d 484, 496 (D.N.J. 2008).   Weidow alleges that school administrative personnel were repeatedly informed of her bipolar disorder by her mother. She alleges that SSD nonetheless discriminated against her by failing to train or supervise its employees concerning the needs of students with disabilities such as hers; failing to identify and evaluate her as a student with a disability; and by failing to establish and implement policies, practices, and procedures appropriate to accommodate students with mental impairments such as hers.  She was allegedly denied the services and benefits of identification, evaluation, and accommodation in her classroom and homebound education, as well as the benefits of participation in extracurricular activities like dances and senior year activities.

Accepting all facts alleged as true, the Court finds that Weidow has met her *prima facie* burden to state a claim under the Rehabilitation Act and ADA.

B.    Statute of Limitations

SSD next argues that Count I should be dismissed because Weidow's claims are barred by a two-year statute of limitations.  (Def.'s Br. 6-7.)  Weidow responds that the statute does not begin to run until the school district provides the parent with the information necessary to complain about the violation, including written notice.  (Pls.' Br. 5.)  In addition, Weidow argues that some of the alleged discrimination took place after October 31, 2006, two years before Plaintiffs filed their Complaint on October 31, 2008.  (*Id*. at 4-5)  Weidow also argues that the "continuing violations" doctrine applies because the conduct alleged in the Complaint consists of a pattern that became cognizable only over time.  (*Id.* at 5.) However, the Court need not reach Weidow's arguments because applicable Pennsylvania

12

law tolls the civil claim of a minor until she reaches majority, 42 Pa. Cons. Stat. § 5533, and Weidow was a minor until May, 2008.

A court may dismiss a claim under Rule 12(b)(6) when there is a time bar, so long as "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir.1978) (citing *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir.1975)). The time bar must be apparent on the face of the complaint, or it may not be dismissed under Rule 12(b)(6). *Id.* at 1174.

The statute of limitations that applies to federal claims is a question of federal law. *Weis-Buy Services, Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005). However, when a federal law provides the basis for a cause of action but does not specify a statute of limitations, an appropriate statute of limitations is borrowed from the law of the forum state. *Id.; accord North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995); *Hardin v. Straub*, 490 U.S. 536, 538-39 (1989). The statute of limitations applicable to claims under § 504 of the Rehabilitation Act and Title II of the ADA is the forum state's statute of limitations for personal injury actions. *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008). In Pennsylvania, a two-year statute of limitations applies. *Id.*; 42 Pa. Cons. Stat. § 5524.

In addition, when a statute of limitations is borrowed from the forum state's law, the relevant state tolling rules are also incorporated. *Weis-Buy Services*, 411 F.3d at 422 (citing *Hardin*, 490 U.S. at 539). Pennsylvania law contains a statutory minority tolling rule which states:

(i) If an individual entitled to bring a civil action is an unemancipated minor at

13

the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter.

(ii) As used in this paragraph, the term "minor" shall mean any individual who has not yet attained 18 years of age.

42 Pa. Cons. Stat. § 5533(b)(1)(i)-(ii).

Because Weidow was a minor until May of 2008 (*see* Compl. ¶¶ 5, 12), the two-year statute of limitations for her claims began to run in May of 2008. Plaintiffs filed their complaint on October 31, 2008. Thus, Weidow's claims are timely.

C.   Exhaustion of Administrative Remedies

SSD next makes a twofold argument that Count I should be dismissed for failure to exhaust administrative remedies prior to bringing suit. First, SSD argues that the relief Weidow is seeking under the Rehabilitation Act and the ADA is available under the IDEA, and therefore the exhaustion of administrative remedies specified in 20 U.S.C. § 1415(*l*)[2] is required. (Def.'s Br. 3-4.) Second, SSD argues that the ADA itself requires the exhaustion of administrative remedies in that a plaintiff must file a charge of discrimination with the

---

[2]   The statute provides:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *except that* before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*) (emphasis added).

14

Pennsylvania Human Relations Commission.  (*Id.* at 6.)  Weidow responds to the first

argument by asserting that exhaustion is not required because she is seeking compensatory

damages, not injunctive relief, and compensatory damages are not available under the IDEA.

(Pls.' Br. 3-4.)  Weidow responds to the second argument by arguing that Title I of the ADA

requires exhaustion, but that Title II, under which she seeks relief, does not require

exhaustion.  (*Id.* at 4.)

SSD's first argument fails because Weidow seeks compensatory damages.  The

preemptive effect of § 1415(*l*) applies only to relief also available under the IDEA.  20 U.S.C.

§ 1415(*l*); *see also Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 763 (3d Cir. 1995) ( "Section

1415[(*l*)] was ... enacted to reaffirm ... the viability of section 504, 42 U.S.C. § 1983, and

other statutes as separate vehicles for ensuring the rights of handicapped children.").

Though the Third Circuit Court of Appeals has not yet considered whether compensatory

damages are available under the IDEA, the courts of appeals that have considered the

question have all held that such damages are not available.  *See Derrick F. v. Red Lion Area

Sch. Dist.*, 586 F. Supp. 2d 282, 297 (M.D. Pa. 2008) (Rambo, J.) (citing cases).  Several

district courts in this circuit have followed suit and held that compensatory damages are not

available under the IDEA, with certain exceptions not relevant here.  *See id.* (citing cases).

This Court agrees that compensatory damages are not available under the statute.  When

a plaintiff seeks relief that is not available in administrative proceedings, exhaustion is not

required.  *See Somerset Hills*, 559 F. Supp. 2d at 496 n.5 (in the context of a claim under

§ 504); *Hicks v. Purchase Line Sch. Dist.*, 251 F. Supp. 2d 1250, 1253 (W.D. Pa. 2003).

"A plaintiff cannot evade the IDEA's exhaustion requirement simply by framing his or

her action as one for monetary relief."  *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 789 (2d

Cir. 2002). However, because Weidow graduated before filing this action (*see* Compl. ¶ 125), she cannot seek relief through the IDEA administrative process because SSD's obligation to identify and evaluate her as a student with a disability terminated with her graduation. *See* 20 U.S.C. §1414(c)(5)(B)(I); *see also Hicks*, 251 F. Supp. 2d at 1253 (plaintiff excused from IDEA exhaustion requirements where he had graduated and sought only compensatory damages). While a plaintiff cannot deliberately delay bringing an action to receive compensatory damages in lieu of relief through the IDEA administrative process, *Taylor*, 313 F.3d at 791, there is no indication Weidow so delayed in this case. SSD implies that Weidow and her mother had an affirmative duty to seek identification and evaluation as a student who may be in need of accommodation. However, the IDEA imposes the duty to identify and evaluate students on the school district, not the child or parents. *Hicks*, 251 F. Supp. 2d at 1253; 20 U.S.C. § 1412(a)(3)(A).

Because Weidow seeks relief that is unavailable under the IDEA, she is not subject to the exhaustion requirements of 20 U.S.C. § 1415(*l*).

SSD's second exhaustion argument also fails. The Rehabilitation Act does not require a plaintiff to exhaust her administrative remedies before filing suit in federal court. *Freed v. Consol. Rail Corp.*, 201 F.3d 188, 191-94 (3d Cir. 2000) ("[W]e reaffirm our long-standing position that section 504 [of the Rehabilitation Act] plaintiffs may proceed directly to court without pursuing administrative remedies."); *Herring v. Chichester Sch. Dist.*, No. 06-cv-5525, 2007 U.S. Dist. LEXIS 82571, at *9 (E.D. Pa. 2007). Although Title I of the ADA requires exhaustion, Title II does not require it. *Smith v. City of Philadelphia*, 345 F. Supp. 2d 482, 486-87 (E.D. Pa. 2004); *Saylor v. Ridge*, 989 F. Supp. 680, 684-85 (E.D. Pa. 1998); *Bracciale v. City of Philadelphia*, No. 97-cv-2464, 1997 U.S. Dist. LEXIS 16757, at

*22-*23 (E.D. Pa. Oct. 29, 1997) (citing cases); 28 C.F.R. § 35.172, Apx. A. Therefore, the Court finds that Count I cannot be dismissed for a failure to exhaust administrative remedies.

Based on the foregoing, the Court will deny SSD's motion to dismiss Count I of Plaintiffs' complaint.

## II.      Count III – Equal Protection

Count III of Plaintiffs' complaint raises a claim by Weidow pursuant to 42 U.S.C. § 1983 for violation of the Fourteenth Amendment's Equal Protection Clause. To prevail on a § 1983 claim, a plaintiff must demonstrate that a state actor deprived him of a federally protected right, privilege, or immunity. 42 U.S.C. § 1983; *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). There is no dispute that SSD is a state actor for § 1983 purposes. SSD argues Weidow cannot show she was deprived of a constitutional right because she does not state a claim for violation of the Equal Protection Clause. (Def.'s Br. 9-10.) Weidow argues that she meets the pleading requirements of a "class of one" equal protection claim. (Pls.' Br. 8-10.)

To state a class of one claim, the plaintiff must allege that (1) the defendant treated her differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2008). A plaintiff does not have to identify actual instances when other have been treated differently in her complaint. *Phillips*, 515 F.3d at 244. However, her allegations must include a claim that she has been treated differently from others similarly situated. *Id.*

Weidow sufficiently pleads a class of one claim. She alleges that she was treated differently from similarly situated students and has sufficient factual averments to support

the allegation. For example, she alleges SSD did not send Weidow's transcripts to the colleges she applied to, though it did so for the rest of the graduating class. (Compl. ¶ 123.) She also alleges that school personnel informed Weidow's homebound instructor that Weidow would need to notify colleges she was a homebound student, though Stefonetti had never been given a similar instruction with respect to any other homebound student. (*Id*. ¶ 122.) Weidow alleges that SSD intentionally treated her differently from other students and had no rational basis for its actions. (*Id*. ¶¶ 143-44.) She has therefore pled the elements of a class of one claim.

The Court will deny SSD's motion to dismiss Count III of Plaintiffs' complaint.

### III.  Count IV – Due Process

In Count IV of Plaintiffs' complaint, Bentler raises a claim pursuant to 42 U.S.C. § 1983 for violation of the substantive component of Fourteenth Amendment's Due Process Clause. "To state a due process claim under § 1983, [plaintiff] must identify a recognized liberty or property interest within the purview of the Fourteenth Amendment, and [show] that [she was] intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Anspach v. City of Philadelphia*, 503 F.3d 256, 262 (3d Cir. 2007) (internal quotation marks and citations omitted).

Bentler alleges that SSD's conduct deprived her of a fundamental liberty interest in providing care and guidance related to her daughter's education. (*Id*. ¶¶ 147-48.) SSD argues Count IV should be dismissed because Bentler fails to state any facts to support this claim. (Def.'s Br. 10-12.) Bentler argues that SSD infringed on her parental rights when it failed to stop harassment of Weidow, despite the fact that Bentler contacted Principal McGraw on February 28, 2007 to advise him of specific instances of harassment. She

18

further argues that SSD infringed on her rights by failing to take steps to transition Weidow from homebound instruction back to Scranton H.S. (Pls.' Br. 11.) The Court concludes, however, that Bentler's allegations fail to identify a recognized liberty interest.

The U.S. Supreme Court has long recognized that a parent's right to care for and guide her child is a fundamental liberty interest, *see, e.g., Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925); *Wisconsin v. Yoder*, 406 U.S. 205 (1972); *Troxel v. Granville*, 530 U.S. 57 (2000), including the right "to direct the education and upbringing of one's children," *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997) (articulating fundamental rights protected by the Due Process Clause). However, the Third Circuit Court of Appeals has noted that, "[t]he Supreme Court has never been called upon to define the precise boundaries of a parent's right to control a child's upbringing and education. It is clear, however, that the right is neither absolute nor unqualified." *C. N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 182 (3d Cir. 2005).

The key aspect of an unconstitutional infringement of parental rights missing from Bentler's allegations is the presence of constraint or compulsion by the state actor. The Third Circuit Court of Appeals stressed this point in *Anspach*, 503 F.3d 256. The court there held that plaintiff parents failed to state a due process claim against defendant health center for interference with their parental rights where the center provided their minor daughter with emergency contraception without notifying them. *Id.* at 259-60, 264. Plaintiffs argued that the conduct of center personnel was aimed at preventing the parents from learning of the daughter's pregnancy because they failed to ask her age, failed to ask whether her parents knew of her predicament, and failed to encourage her to consult her parents. *Id.* at 261-62.

The court, however, noted that the daughter's interaction with center personnel had been completely voluntary, *id.* at 267, and stressed "[c]ourts have recognized the parental liberty interest only where the behavior of the state actor compelled interference in the parent-child relationship." *Id*. at 262. The court noted that in each U.S. Supreme Court case recognizing an interference with the parent or child's rights, the state actor was either requiring or prohibiting some activity. *Id*. at 263 (citing *Doe v. Irwin*, 615 F.2d 1162 (6th Cir. 1980)). Quoting the Sixth Circuit Court of Appeals, the court traced the precedent:

> In *Meyer v. Nebraska*, [262 U.S. 390 (1923)] the state forbade the teaching of foreign languages to pupils who had not passed the eighth grade. The Court held the statute not reasonably related to any end within the competency of the state and violative of parents' Fourteenth Amendment right to liberty. In *Pierce v. Society of Sisters*, [268 U.S. 510 (1925)] the statute required all children between the ages of 8 and 16 to attend public schools. The Court found that the law unreasonably interfered with the liberty interest of parents to direct the upbringing and education of their children, including the right to send them to accredited private schools. Again in *Wisconsin v. Yoder*, [406 U.S. 205 (1972)] the law in question made school attendance compulsory. The Court held that Amish parents' First Amendment rights to the free exercise of their religion were infringed by the attendance requirement. In *Prince v. Massachusetts*, [321 U.S. 158 (1944)] child labor laws were construed to prohibit street sales of religious tracts by children. In that case the Court upheld the conviction of a parent who contended that these laws unreasonably interfered with her right of free exercise of religion and her parental rights. In so holding, the Court determined that a state's authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience.

*Id.* at 263-64 (quoting *Doe*, 615 F.2d at 1168)). The court concluded that, "[v]iewed against this legal backdrop, it is clear that Plaintiffs cannot maintain a due process violation when the conduct complained of was devoid of any form of constraint or compulsion." *Id*. at 264. Plaintiff's real complaint, the court reasoned, was not that state actors interfered with their parental rights, but that the "actor did not *assist* [plaintiffs] as parents or affirmatively *foster*

the parent/child relationship." *Id*. at 265 (emphasis in original). This complaint failed to state a fundamental liberty interest because "the Constitution 'does not require the Government to assist the holder of a constitutional right in the exercise of that right.'" *Id*. at 266 (quoting *Haitian Refugee Center, Inc. v. Baker*, 953 F.2d 1498, 1513 (11th Cir. 1992)).

Here, Plaintiffs' allegations are similarly "devoid of any form of constraint or compulsion." *Id.* at 264. Bentler alleges that SSD failed stop her daughter's harassment and failed to transition her from homebound instruction back to the school environment, despite Bentler's apparent wishes regarding Weidow's education and treatment at school. Like the *Anspach* parents, Bentler does not allege an interference with her parental rights, but rather a failure to act affirmatively in support of them. Thus, like the *Anspach* court, this Court must conclude that the plaintiff parent fails to allege a protected liberty interest within the purview of the Fourteenth Amendment.

The Court will therefore grant SSD's motion to dismiss Count IV of Plaintiff's complaint.

## IV.    Punitive Damages

Finally, SSD argues that Plaintiffs' claims for punitive damages (*see* Mot. ¶¶ 9-10; Compl. ¶ 150) must be dismissed because punitive damages may not be collected against a school district, as a subdivision of a municipality. (Def.'s Br. 12.) Moreover, punitive damages are not available for violations of § 504 of the Rehabilitation Act or Title II of the ADA. *Doe v. County of Centre, Pa.*, 242 F.3d 437, 455-58 (3d Cir. 2001); *see generally City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 (1981). Plaintiffs state, however, that they no longer seek punitive damages against SSD. (Pls.' Br. 12.) Therefore, the Court will

21

grant SSD's motion to dismiss Plaintiffs' claim for punitive damages.

## CONCLUSION

For the reasons discussed above, Defendant SSD's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) will be granted in part and denied in part. The Court will deny the motion to dismiss Counts I and III of the complaint, but will grant the motion to dismiss Count IV and Plaintiffs' claim for punitive damages against SSD.

An appropriate order follows.

August 19, 2009                          /s/ A. Richard Caputo
Date                                     A. Richard Caputo
                                         United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CORRINA WEIDOW and KERRY
BENTLER,

     Plaintiffs,

        v.

SCRANTON SCHOOL DISTRICT,

     Defendant.

NO. 3:08-CV-1978

(JUDGE CAPUTO)

## <u>ORDER</u>

**NOW**, this   19th   day of August, 2009, **IT IS HEREBY ORDERED** that Defendant Scranton School District's Motion to Dismiss (Doc. 7) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)    Defendant's motion to dismiss Count I is **DENIED**.

(2)    Defendant's motion to dismiss Count III is **DENIED**.

(3)    Defendant's motion to dismiss Count IV is **GRANTED**.

(4)    Defendant's motion to dismiss Plaintiffs' claims for punitive damages is **GRANTED**.

                              /s/ A. Richard Caputo
                              A. Richard Caputo
                              United States District Judge